## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

L.B.G.[1],

        Plaintiff,

v.                                                            Case No. 21-1026-DDC

KILOLO KIJAKAZI,
Acting Commissioner of the Social
Security Administration,

        Defendant.

_____

## MEMORANDUM AND ORDER

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision by the

Commissioner of the Social Security ("the Commissioner") denying plaintiff's claim for

Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the

Social Security Act, as amended.  Plaintiff's brief asks the court to reverse the Commissioner's

decision denying the claim and remand the claim to the Commissioner for a new administrative

hearing.  Doc. 14.  The Commissioner has filed a response brief, opposing plaintiff's request for

judicial review and asking the court to affirm the Commissioner's decision.  Doc. 18.  Plaintiff

filed a reply brief on September 2, 2021.  Doc. 19.

The court concludes that the substantial evidence supports the legal findings in the ALJ's

decision.  The court thus affirms the Commissioner's decision denying plaintiff benefits and

explains why, below.

---

[1]       The court makes all its Memorandum and Orders available online.  Therefore, as part of the
court's efforts to preserve the privacy interests of Social Security disability claimants, it has decided to
refer to the plaintiff in these cases only by plaintiff's initials.

## I.    Background

In 2018, plaintiff applied for Disability Insurance Benefits and Supplemental Security Benefits.  Doc. 13 at 285–297 (AR 280–292).  Plaintiff alleged disability beginning on August 31, 2018.  *Id*. at 285, 291 (AR 280, 286).  Plaintiff's application wound its way through preliminary proceedings and ended up before an ALJ for a hearing.  The ALJ conducted a hearing on September 9, 2020, where plaintiff appeared and testified.  *Id*. at 43 (AR 38).

On September 29, 2020, the ALJ issued a written decision concluding plaintiff was not disabled, as the Social Security Act defines that term, from August 31, 2018, to the decision's date.  *Id*. at 12–25 (AR 7–20).  The Appeals Council denied plaintiff's request for review.  *Id*. at 6–8 (AR 1–3).  Having exhausted the proceedings before the Commissioner, plaintiff now seeks judicial review and reversal of the final decision denying plaintiff's application for Disability Insurance Benefits and Supplemental Security Income.

## II.    Legal Standard

### A.    Standard of Review

Section 405(g) of Title 42 of the United States Code grants federal courts authority to conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's denial of benefits is limited to two questions:  Whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards.  *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020); *see also Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); 42 U.S.C. § 405(g).

2

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" but it is "more than a mere scintilla[.]" *Noreja*, 952 F.3d at 1178 (quotation cleaned up). While the court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," it neither reweighs the evidence nor substitutes its judgment for the Commissioner's. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation cleaned up). But the court also does not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012). When the court decides whether substantial evidence supports the Commissioner's decision, it "examine[s] the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision[.]" *Id*. (citation omitted). "'Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.'" *Noreja*, 952 F.3d at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)).

Failing "to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). But such a failure justifies reversal only in "'appropriate circumstances'"—applying an improper legal standard does not require reversal in all cases. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass*, 43 F.3d at 1395); *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in *Glass*). Some errors are harmless and require no remand or further consideration. *See, e.g.,*

*Mays*, 739 F.3d at 578–79; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161–63 (10th Cir. 2012); *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

### B.     Disability Determination

Claimants seeking Disability Insurance Benefits and Supplemental Security Income bear the burden of showing they are disabled.  *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009). In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

The Commissioner applies "a five-step sequential evaluation process to determine disability."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and 20 C.F.R. § 416.920 (governing claims for Supplemental Security Income)).  As summarized by the Tenth Circuit, this familiar five-step process proceeds in this fashion:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity.  If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. . . .  At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [the claimant] from performing [the claimant's] past relevant work.  Even if a claimant is so impaired, the agency considers, at step five, whether [the claimant] possesses the sufficient residual functional capability [RFC] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(a)(4), 20 C.F.R. § 416.920(a)(4).

These five sequential steps of 20 C.F.R. § 404.1520(a)(4) apply both to physical and mental impairments.  Still, at both step two and three, an additional "special technique" is added to each level of the administrative review process when assessing the severity of mental impairment(s).  20 C.F.R. §§ 404.1520a, 416.920a.  When plaintiff alleges (or the record contains evidence of) mental impairment, the ALJ must use the special technique often called "paragraph B criteria" and document accordingly.  20 C.F.R. §§ 404.1520a(a)–(e)(5), 416.920a (paragraph B criteria refers to 20 C.F.R. Subpart. P, App. 1, § 12.00.); *see also Hill v. Sullivan*, 924 F.2d 972, 975 (10th Cir. 1991).  The regulation requires the ALJ to evaluate whether the claimant has a medically determinable mental impairment.  20 C.F.R. §§ 404.1520a(b)(1), 416.920a (evaluating mental impairments); *see generally* 20 C.F.R. § 404.1521 (detailing the requirements to establish a medically determinable impairment); 20 C.F.R. § 416.921 (same).

The claimant bears the "burden of proof on the first four steps," of the five step sequential process, but the burden shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an alternative work activity and that this specific type of job exists in the national economy.'"  *Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  This analysis ends if the Commissioner determines at any point that the claimant is or is not disabled.  *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("If it is determined that a claimant is or is not disabled at any point in the analysis, the review stops.").

## III.   Analysis

The ALJ found that plaintiff has the following severe impairments:  seizure disorder, depressive disorder, post-traumatic stress disorder, and anxiety disorder.  Doc. 13 at 17 (AR 12). But the ALJ concluded that plaintiff's severe impairments—both individually and in

combination—did not meet the severity of one of the impairments listed in 20 C.F.R. Part 404.

*Id*. at 18 (AR 13).  Instead, the ALJ determined, plaintiff has the RFC "to perform a full range of

work at all exertional levels."  *Id.* at 19 (AR 14).  Specifically, the ALJ found that plaintiff:

> can frequently climb stairs, but never climb ropes, scaffolds or ladders.  He can
> frequently balance.  He must avoid unprotected heights and hazardous moving
> machinery.  He is able to carry out detailed, but uninvolved, instructions to perform
> simple, routine, and repetitive tasks [that] involve simple work-related decisions.
> He is able to concentrate and persist for 2-hour periods prior to needing a regularly
> scheduled break.  He can tolerate occasional interaction with supervisors,
> coworkers, and the public.

*Id*.  Based on this RFC finding, the ALJ determined that plaintiff could not perform any past

relevant work.  *Id*. at 23 (AR 18).  But, in contrast and given plaintiff's age, education, work

experience, and RFC, the ALJ concluded that "there are jobs that exist in significant numbers in

the national economy" where plaintiff can perform as delineated in 20 C.F.R. §§ 404.1569,

404.1569(a), 416.969, and 416.969(a).  *Id.*  Thus, at step five of the analysis, the ALJ determined

that plaintiff was not disabled—under the Social Security Act's definition of that term—from

August 21, 2018, to the date of the decision, September 29, 2020.  *Id*. at 24 (AR 19).

Plaintiff moves the court to reverse the ALJ's decision.  He argues that the ALJ erred by

disregarding and failing to address the reasons for the weight given to plaintiff's subjective,

fluctuating symptoms that worsened over time and corresponded to reports from medical

sources.  The ALJ acknowledged plaintiff's complaints "of flashbacks, nightmares, some

avoidance, excessive worry, occasional irritability, social anxiety, depression, avoidant behavior,

paranoia, and a history of occasional self-harm."  Doc. 13 at 21 (AR 16).  But the ALJ concluded

that these mental impairments "are inconsistent with more than moderate psychological

limitation."  *Id.* at 22 (AR 17).  The ALJ based this conclusion on plaintiff's "conservative

treatment history and the clinical signs and findings[.]"  *Id.*  In the RFC, the ALJ

"accommodated [plaintiff's] moderate difficulties in understanding, remembering or applying information, interacting with others, maintaining concentration, persistence or maintaining pace, and adapting or managing himself by limiting him to detailed, but uninvolved instructions to perform simple, routine, and repetitive tasks involv[ing] simple work-related decisions." *Id.* But, the ALJ concluded, plaintiff's reports about "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* at 20 (AR 15).

Plaintiff contends that the ALJ's decision didn't articulate the "specific reasons for the weight given" to plaintiff's "fluctuating symptoms" and was unsupported by record evidence. Doc. 19 at 2.  Plaintiff here relies on *Brownrigg*, where our Circuit reversed and remanded because that ALJ's decision denying disability benefits lacked well-articulated reasons for not crediting claimant's allegations.  *Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017).  Critically, that record in *Brownrigg* contained evidence of a specific event affecting claimant's pain level after his doctor had treated him.  And, the ALJ's decision omitted that new event.  *Id*. at 546–47.  Here, plaintiff doesn't cite a specific event that the ALJ omitted, relying instead on plaintiff's self-reports of worsening symptoms.  Doc. 19 at 3.  But, the ALJ's decision doesn't need to account for and explain every single piece of evidence.  Instead, the ALJ "merely needs to allow the Court to reasonably discern the 'path' to the ALJ's conclusions."  *Debra K v. Saul*, No. 19-1150-EFM, 2020 WL 1446864, at *3 (D. Kan. Mar. 25, 2020) (citing *Ala. Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 497 (2004)).  Here, the ALJ provided a discernable path.

In the RFC finding provided for step five of the ALJ's analysis, the ALJ acknowledged and properly documented plaintiff's alleged symptoms and the reasoning and weight given to all

the evidence.  *Id*. at 18–23 (AR 13–18).  The ALJ reasonably concluded plaintiff's mental

impairments cause "moderate difficulties in understanding, remembering, or applying

information, interacting with others, maintaining concentration, persistence or maintaining pace,

and adapting or managing himself[.]"  *Id*. at 22 (AR 17).  Then, the ALJ accommodated the

plaintiff's moderate limitations by reducing the plaintiff's RFC.  *Id*.  The ALJ extensively

reviewed the medical evidence in the record and plaintiff's reported subjective symptoms.  Also,

the ALJ found that plaintiff's medically determinable impairments reasonably could cause the

alleged symptoms, but those symptoms nevertheless differed from the medical and other

evidence in the record.  *Id*. at 20–23 (AR 15–18); *see also* 20 C.F.R. § 404.1529(c)(4) ("[W]e

will evaluate your statements in relation to the objective medical evidence and other

evidence . . . [and] will consider whether there are any inconsistencies in the evidence and the

extent to which there are conflicts between your statements and the rest of the evidence[.]").

Indeed, the ALJ took note of both plaintiff's alleged "fluctuating symptoms"—occasional

euthymic moods and occasional medication noncompliance—and providers' records showing

that plaintiff generally exhibited "an intact memory, attention, and concentration, normal speech,

goal directed thoughts, fair insight and judgment[.]"  *Id*. at 22 (AR 17 (citing Exs. 11F/50–54,

58, 62, 66, 78–80, 83–84; 14F/13–14, 40–41; 15F)).  Specifically, the ALJ cited plaintiff's recent

medical records.  For instance, the ALJ explicitly cited one recording plaintiff's report of self-

harm in July 2020.  *See* Doc. 13 at 755–756 (AR 750–51).  The ALJ also cited another record

from August 2020 where plaintiff reported mild urges to self-harm but also reported "a positive

response" to self-care to reduce anxiety and noted that plaintiff appeared "oriented" and had

"normal" perception.  *See id.* at 762–64 (AR 757–59).  Also, as the government notes, later

medical records memorialize findings that plaintiff was "[a]ppropriate and pleasant," maintained

"good eye contact," and showed "no overt signs of anxiety or depression." *See* Doc. 18 at 5 (citing Doc. 13 at 786 (AR 781)). And, other records reflect that plaintiff reported to medical providers in July 2020 that plaintiff "cares for 7-year old son from prior relationship" and also "cares for 3 daughters, belonging to his ex-girlfriend." *Id.* (citing Doc. 13 at 783 (AR 778)). The ALJ also recognized the medical records showed "conservative treatment history" and juxtaposed with the cited "clinical signs and findings[,]" the ALJ concluded that plaintiff did not have a "more than moderate psychological limitation." Doc. 13 at 22 (AR 17). Thus, while the ALJ did not find plaintiff's impairments resulted in "severe" limitations requiring a total reduction in RFC, he still accommodated plaintiff's fluctuating symptoms in the RFC. *Id.* at 23 (AR 18). The record evidence supports those findings.

The ALJ also explained that he gave persuasive weight to the treating physician's opinion about plaintiff's mental impairments. *Id.* at 22 (AR 17). The ALJ cited the opinion of Dr. Barber, who concluded that plaintiff is "no more than moderately limited in his ability to perform basic mental work activities[.]" *Id.* at 22 (AR 17 (citing Ex. 10F)); *see also id.* at 580–82 (AR 575–77). The ALJ recognized that Dr. Barber "is a treating source" and "although he is not a mental health professional," his opinion "is consistent with the claimant's conservative treatment history." *Id.* When Dr. Barber completed the disability forms, he checked boxes signifying plaintiff was "moderately limited" in 17 functional areas and "not significantly limited" in three functional areas among the 20 categories of mental limitations identical to the categories in Section I of the agency's mental residual functional capacity assessment (MRFCA) form. *Id.* at 581–82 (AR 576–77).

Despite the ALJ's finding that Dr. Barber's opinions were persuasive, plaintiff contends the ALJ failed to incorporate these moderate limitations in the RFC. But, an ALJ isn't required

to "expressly incorporate these moderate limitations in the assessment of [RFC]." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Lee v. Colvin*, 631 F. App'x 538, 541–542 (10th Cir. 2015)).  Instead, an ALJ need only "account for moderate limitations by limiting the claimant to particular kinds of work activity."  *Id.* (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015)).  The ALJ followed that practice here.  He explained that he had "accommodated" plaintiff's "moderate difficulties" in various mental work activities in the RFC.  Doc. 13 at 22 (AR 17).  And, specifically, he included in the RFC that plaintiff "is able to concentrate and persist for 2-hour periods prior to needing a regularly scheduled break" and "can tolerate occasional interaction with supervisors, coworkers, and the public."  *Id.*; *see also id.* at 19 (AR 14).

The ALJ also noted that Dr. Barber's opinion that plaintiff had no more than moderate limitations in the ability to perform basic mental work activities was "supported by Dr. Barber's generally unremarkable clinical signs and findings, including a pleasant demeanor and normal mood and affect."  Doc. 13 at 22 (AR 17); *see also id.* at 573–74 (AR 568–69).  Dr. Barber's findings comport with other record evidence that the ALJ cited showing plaintiff "generally exhibited an intact memory, attention and concentration, normal speech, goal directed thoughts, fair insight and judgment and an occasionally euthymic mood[.]"  *Id.* at 22 (AR 17 (citing Exs. 11F/50–54, 58, 62, 66, 78–80, 83–84; 14F/13–14, 40–41; 15F)); *see also id.* at 632–36, 640, 644, 648, 660–62, 665–66, 728–29, 755–56, 762–64 (AR 627–31, 635, 639, 643, 655–57, 660–61, 723–24, 750–51, 757–59).

At its core, plaintiff's argument asks the court to accept plaintiff's interpretation of Dr. Barber's opinion about plaintiff's moderate limitations.  It also asks the court to adopt plaintiff's view of how the ALJ should have incorporated that opinion into the RFC.  Judge Lungstrum

rejected a similar argument by a social security claimant in *Frakes v. Berryhill*, No. 16-1066-JWL, 2017 WL 1354863, at *4 (D. Kan. Apr. 13, 2017). In that case, the treating source completed a check box form but "did not provide any explanation demonstrating <u>functional</u> limitations which are clearly more restrictive than the RFC assessed by the ALJ." *Id.* Judge Lungstrum explained that the "question for the court [was] not whether [p]laintiff can provide an evidentiary basis to support her view of [the treating source's] opinion, but whether the record evidence supports the ALJ's findings in this regard." *Id.* Judge Lungstrum answered that question in the affirmative, finding that the record evidence supported the ALJ's assessment of the claimant's RFC. *Id.*

Similarly, the court finds that the administrative record supports the ALJ's findings about plaintiff's RFC. As already explained, the ALJ accommodated plaintiff's "moderate difficulties" with basic mental work activities by incorporating those limitations into the RFC. Doc. 13 at 22 (AR 17). And, the ALJ adequately explained and cited record evidence supporting the RFC findings. *Id.* Plaintiff's differing interpretation of the record evidence doesn't show that the ALJ erred. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining that the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence" and instructing that courts may not "displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo" (quotation cleaned up)).

In sum, the ALJ considered the whole record and appropriately cited the reasons for accepting and rejecting the evidence, including plaintiff's subjective reports of "fluctuating symptoms" used to support the RFC determination. *Clifton v. Chater*, 79 F.3d 1007, 1009–10

(10th Cir. 1996) (explaining that an ALJ "is not required to discuss every piece of evidence" in the administrative record as long as the ALJ's findings "demonstrate that the ALJ considered all of the evidence" as a whole).  Plaintiff hasn't shown that the ALJ erred in the RFC assessment.

## IV.  Conclusion

The ALJ's decision is supported by substantial evidence in the record and applies the proper legal standard.  Reviewing courts can't reweigh the evidence and thus may evaluate only whether the ALJ accounted for the substantial evidence.  *Lax*, 489 F.3d at 1084.  Here, the court finds that the ALJ properly reconciled the medically observable evidence, the opinions of treating physicians and mental health professionals, and plaintiff's self-reported symptoms.  After considering the briefs submitted and conducting its own review of the administrative record, the court finds that substantial evidence supports the ALJ's decision.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff's applications for Disability Insurance Benefits is affirmed.  The court directs the Clerk to enter Judgment under the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**IT IS SO ORDERED.**

**Dated this 13th day of September, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**